CHARLES S. ASHLEY *vs.* THREE JUSTICES OF THE SUPERIOR COURT & intervenors.

Bristol.   June 18, 1917. — July 30, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Corrupt Practices Act.   Elections.   Constitutional Law.   Prohibition, Writ of. Words,* "Shall," "Property," "Suits between two or more persons."

Under St. 1914, c. 783, § 10, an allegation, in a petition charging the respondent with having violated provisions of the corrupt practices act in connection with his election as the mayor of a certain city, that the petitioners are "inhabitants, taxpayers, and qualified voters in the city" in question, is a sufficient averment that the petitioners had a right to vote for mayor at the election in question, which was less than two months before the filing of the petition.   And, if such allegation were not sufficient, it could be amended, so that the validity of the proceeding would not be impaired.

In the provision of St. 1914, c. 783, § 10, (c) that, "Election petitions . . . shall be heard and determined by three justices of the Superior Court who shall each year, immediately following the annual State election, be assigned by the Chief Justice of said court for the hearing and determination of all matters arising under election petitions during the ensuing year," the word "shall" has no compulsory significance in relation to fixing the time when the assignment of the three judges shall be made, and such an assignment made by the Chief Justice of the Superior Court nearly three months after the last annual State election on the day following the granting by a judge of the Superior Court of an order to the effect that there is reasonable cause to believe that a corrupt practice has been committed by the respondent named in an election petition under the statute, is a valid assignment of the three judges who are to hear and determine all matters arising under election petitions during the year, including the petition already filed.

By an assignment by the Chief Justice of the Superior Court under authority of the statute named above of three judges of that court to hear election cases during the year no new tribunal is created, and the statute does not violate c. 2, § 1, art. 9 of the Constitution, which provides that "All judicial officers . . . shall be nominated and appointed by the Governor, by and with the advice and consent of the Council."

For the reason named above it did not become necessary for this court in the present case to consider, *whether* the subject of elections is of a nature so political that the Legislature is unlimited in its power to establish tribunals to deal with questions relating to elections to public office and to define the jurisdiction of such tribunals.

Article 15 of the Declaration of Rights, which provides that "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised, the parties have a right to a trial by jury," does not apply to an election petition under the statute named above; because the right to hold an office to which one has been elected is not "property" within the meaning of the word as used in the Declaration of Rights and a proceeding upon an election petition is not a "suit between two or more persons" in the sense in which those words there are used.

The hearing of an election petition under the corrupt practices act is a civil proceeding in the nature of a quo warranto, and is not a criminal prosecution.

The provisions of the corrupt practices act contained in St. 1913, c. 835, § 497, as amended by St. 1914, c. 783, § 12, that "Whoever is found by final judgment upon an election petition . . . to have committed a corrupt practice, and shall, in accordance with such finding forfeit the office to which he has been elected, or whoever is convicted in a criminal proceeding of violating any provision of law relating to corrupt practices in elections shall be disqualified as a voter for a period of three years following the date of his conviction, and shall be deemed. ineligible to hold public office for the said period," considered in connection with the Fortieth Amendment to the Constitution, which added to the classes of persons from whom the right to vote is withheld, who theretofore were "paupers and persons under guardianship," "persons temporarily or permanently disqualified by law because of corrupt practices in respect to elections," do not give the respondent in an election petition a constitutional right to a trial by jury thereon.

The provisions of the corrupt practices act above described impose no unconstitutional limitations upon the right to vote or the right to hold office.

The "full power and authority" given to the General Court by c. 1, § 1, art. 3 of the Constitution "to erect and constitute judicatories and courts of record, or other courts," includes by necessary implication the power to fix the territorial limits within which such courts shall exercise jurisdiction and the places at which they shall be held. The provision of the corrupt practices act that election petitions shall be entered in the Superior Court in Suffolk County is within this power, and the respondent's right under art. 11 of the Declaration of Rights "to obtain right and justice freely" is not impaired thereby.

There is nothing in the corrupt practices act in conflict with the provision of art. 9 of the Declaration of Rights that "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

There is nothing in the corrupt practices act that deprives the respondent in an election petition of the equal protection of the laws.

The provision of the corrupt practices act contained in St. 1913, c. 835, § 371, as amended by St. 1914, c. 783, § 11, excepting from its operation the elections of town officers in towns of less than ten thousand inhabitants, does not impair the constitutional validity of the act.

There is nothing in the corrupt practices act in derogation of the constitutional powers of the Supreme Judicial Court.

There is nothing in the corrupt practices act in conflict with any provision of the Constitution of the United States.

The provision in regard to trial by jury in the Seventh Amendment to the Constitution of the United States relates only to the courts of the United States.

Trial by jury is not essential to the due process of law secured by the Fourteenth Amendment to the Constitution of the United States.

Neither the right to hold an elective public office nor the right to vote is a property right within the meaning of the Fourteenth Amendment to the Constitution of the United States.

The portion of the corrupt practices act contained in St. 1914, c. 783, § 10, which in *Dinan* v. *Swig*, 223 Mass. 516, was held to be unconstitutional and void as in violation of the provisions of the Constitution, which make each branch of the General Court the final judge of the returns, elections and qualifications of its own members, is distinct and separate from the rest of the act and does not affect the validity of the other parts.

A writ of prohibition will not be issued to correct errors or irregularities of a tribunal that is acting within its jurisdiction, and can be invoked only to prevent such tribunal from exercising a jurisdiction that it does not possess.

The respondent named in an election petition brought under St. 1914, c. 783, § 10, charging him with having violated the provisions of the corrupt practices act in connection with his election as the mayor of a city, appeared specially and pleaded specially that he could not be held to answer the petition because the subpoena addressed to him had been made returnable in fifteen days instead of fourteen days after the filing of the petition. A few days later, without waiting for the Superior Court to pass upon his plea, he brought a petition for a writ of prohibition against the three judges of the Superior Court assigned to hear election petitions. *Held*, that the matter set up in the special plea in regard to the return day of the subpoena was within the jurisdiction of the Superior Court, and was not open to the petitioner upon his petition for a writ of prohibition.

PETITION, filed on February 16, 1917, and allowed to be filed in its amended form on March 20, 1917, by Charles S. Ashley, who was elected mayor of New Bedford on December 5, 1916, against three justices of the Superior Court, for a writ of prohibition prohibiting the respondents from proceeding to hear and determine an election petition of Edward R. Hathaway and four others, charging the present petitioner with having violated the corrupt practices act and seeking to have his election as mayor of New Bedford declared void, alleging "that on January 25 last Edward R. Hathaway and four others of said New Bedford made written application to a justice of the Superior Court sitting in Suffolk County for leave to file an election petition and obtained an order thereon giving such leave, and thereafter on January 26, 1917, filed in the Superior Court for the County of Suffolk an election petition asking to have the aforesaid election of this petitioner as mayor of New Bedford declared void; that neither the said application, nor the said order, nor the said petition, alleged that the said Hathaway and four others, or any of them, had the right to vote for this petitioner, or had the right to vote at the election in which this petitioner was chosen mayor, and no evidence that they or any of them had such right was introduced at the hearing on said application; that the subpoena issued on said election petition was not returnable fourteen days after the date of the filing of the petition as required by law; that the said writ of subpoena did not bear test of the first justice of the court to which it was returnable; that at the time said election petition was filed no court was legally constituted for the trial of said petition; that at the time said petition was filed the respondents had not been and were not legally assigned for the hearing and determination of election petitions, and had not then been and are not now legally assigned for the hearing and determination of the aforesaid election petition; that the respondents, claiming to be legally assigned for the hearing and determination of election petitions, are intending and proceeding to hear and determine the said election petition brought against this petitioner; that the statute under which the respondents are acting, and the statutes creating, defining, penalizing and punishing corrupt practices at elections are unconstitutional and violate the Constitution of the Commonwealth of Massachusetts; that

the statute under which the respondents are acting and the other statutes aforesaid are unconstitutional and in violation of Section 1 of Article 14 of the Amendments to the Constitution of the United States, in that they abridge the privileges and immunities of citizens of the United States, in that they deprive persons of life, liberty and property without due process of law, and in that they deny persons within their jurisdiction equal protection of the laws; and that the respondents have no jurisdiction to hear and determine said election petition."

The respondents filed an answer. By orders of the court Edward R. Hathaway and the Attorney General were permitted to intervene as parties respondent.

The special appearance of the present petitioner in the Superior Court for the purpose of moving to dismiss the election petition against him, which is mentioned in the opinion, was filed on February 10, 1917, and was as follows: "And now, without waiving any rights, and without submitting himself to the jurisdiction of the court, the respondent, appearing specially for the sole purpose of objecting to the jurisdiction, says that the subpoena in this case was not made returnable fourteen days after the date on which the petition was filed, and that no proper subpoena has been duly served upon the respondent. Wherefore, he prays that the petition be dismissed."

The case came on to be heard before *Braley, J.,* upon the amended petition, the answer to the original petition and the answer to the amended petition. It was admitted that all the allegations of fact in the amended petition and the answers were true, and the single justice found them to be true. The justice reported the case for determination by the full court, with the stipulation that the petition was not to be denied on the ground of discretion.

The case was argued at a special sitting of this court on June 18, 1917.

*J. W. Cummings & C. R. Cummings,* for the petitioner.

*H. E. Woodard,* for Edward R. Hathaway.

*C. W. Mulcahy,* Assistant Attorney General, for the Attorney General, filed a brief.

RUGG, C. J. This is a petition for a writ of prohibition. The petitioner is the respondent in an election petition filed under the

corrupt practices act, St. 1913, c. 835, as amended by St. 1914, c. 783. That election petition charged the respondent therein, the present petitioner, who hereafter will be called the petitioner, with having violated provisions of the corrupt practices act in connection with his election in December, 1916, as mayor of New Bedford. The respondents are three judges of the Superior Court who have been assigned to hear such election petitions. The grounds alleged for the issuance of the writ of prohibition in the petition at bar, succinctly stated, are, (1) that the election petition is fatally defective in jurisdictional allegations not susceptible of being cured by amendment, (2) that the respondents have no jurisdiction to hear the election petition because not legally assigned therefor in accordance with the statute, (3) that the statute under which the election petition is brought is unconstitutional in several respects, (4) that no legal subpoena issued to summon the respondent into court in that, while the statute required that the subpoena "be returnable fourteen days after the date on which the petition is filed," it was in fact made returnable fifteen days thereafter.

In their answer the respondents admit that the petitioner was declared elected and was inaugurated mayor of New Bedford, and aver that they were assigned in accordance with the statutes to hear election petitions, that they were at the time of the filing of the present petition intending and proceeding to hear the election petition brought against the present petitioner and that the papers on file show that the subpoena on the election petition was returnable fifteen days after the filing of the petition, and that the petitioner as respondent therein appeared specially and filed a motion to dismiss the election petition on the ground that the subpoena was not issued according to the statute and he had not been rightly summoned, and that no action has been taken by them upon this motion to dismiss, only seven days having elapsed between its filing and the bringing of the present petition, whereupon they immediately directed all proceedings in the election petition case to be suspended until the further order of the Supreme Judicial Court on the present petition.

The first of the petitioners in the election petition and the Attorney General have been allowed to intervene. The case was reserved upon the petition and answer for the determination of the full court.

: These several grounds urged in support of the issuance of pro-
hibition will be examined in the order stated above.

1. The first is the fatally defective nature of the election peti-
tion.

That petition alleges that the petitioners therein named are
"inhabitants, taxpayers, and qualified voters in the city of New
Bedford." This is a sufficient averment that the petitioners had
a right to vote for mayor at the election in question in a proceeding
of this sort, where the petition, by St. 1914, c. 783, § 10 (*b*),
must be filed within two months after the date of the election to
which it relates, in view of other requirements of law as to regis-
tration of voters and the well known customs of registrars. But
if the allegations were not sufficient, they might be corrected
by amendment. See *Tucker* v. *Fisk,* 154 Mass. 574, 578; *Dart-
mouth* v. *County Commissioners,* 153 Mass. 12; *Crafts* v. *Sikes,*
4 Gray, 194. The decisions relied on by the petitioner need not
be reviewed. They are by courts of other jurisdictions, where
doubtless the policy of the law is more insistent upon niceties
of pleading than it is in this Commonwealth.

2. The second ground urged by the petitioner is that the re-
spondents have not been legally assigned as the three judges to
hear election petitions in accordance with the statute, and hence
are without jurisdiction in the premises.

The words of St. 1914, c. 783, § 10 (*c*) are that "Election peti-
tions . . . shall be heard and determined by three justices of the
Superior Court who shall each year immediately following the
annual State election, be assigned by the Chief Justice of said court
for the hearing and determination of all matters arising under
election petitions during the ensuing year." The annual State elec-
tion in 1916 was held on November 7. The three judges were not
assigned by the Chief Justice of the Superior Court until January
27, 1917, which was the day following the granting of the order
by the Superior Court judge to the effect that there was reasonable
cause to believe that a corrupt practice had been committed by
the petitioner. It does not appear that there had been any occa-
sion for the assignment of the three judges earlier than this date,
or that there had been any suggestion upon the records of the court
that any corrupt practice had been committed in the Common-
wealth. The word "shall" as used in this statute cannot be

thought to have compulsory signification in the sense that the rights of parties and the public fail utterly of possibility of enforcement if there has been a delay in making the assignment of the judges. Important public and private interests ordinarily are not intended to be made dependent wholly upon the performance of a duty by a public officer at a given moment of time. When the word "shall" is used for fixing the time for the performance of official duty, where private rights are not directly concerned, it commonly is construed to be directory rather than mandatory. The act imposes an imperative obligation upon the Chief Justice to make the assignment. It indicates the time when the assignment ought to be made. But the jurisdiction of the court over the parties is not impaired if the assignment of the three judges is made in season to perform the duties established by the statute. *Cheney* v. *Coughlin*, 201 Mass. 204, 211, 212, where earlier cases of this and other courts are collected and reviewed. *Rutter* v. *White*, 204 Mass. 59. *Pevey* v. *Aylward*, 205 Mass. 102. *Rea* v. *Aldermen of Everett*, 217 Mass. 427, and cases cited at 430. It follows that the respondents are not without jurisdiction on this ground to consider the election petition.

3. It is argued that the corrupt practices act is unconstitutional on several grounds.

(a) The provision that three judges of the Superior Court "for the hearing and determination of all matters arising under election petitions during the ensuing year," "shall each year, immediately following the annual State election," "be assigned by the Chief Justice of said court," does not contravene c. 2, § 1, art. 9 of the Constitution to the effect that "All judicial officers . . . shall be nominated and appointed by the Governor, by and with the advice and consent of the council."

The election petitions established by the corrupt practices act are proceedings in the Superior Court. The act provides that all election petitions shall be brought in the Superior Court in the County of Suffolk, that they can be brought only by permission granted by a Superior Court judge after an *ex parte* preliminary hearing, and that they shall be entered in a separate docket by the clerk of the Superior Court for Suffolk County. They are to be heard and determined by three judges of the Superior Court. From beginning to end the matter is conducted by the judges,

recorded upon the records, and the papers are kept in the custody of the clerk, of the Superior Court. No new court is established. No new tribunal is created. A new kind of procedure is created. In some respects the practice is regulated in considerable detail and is made radically different from that heretofore prevailing in more familiar classes of litigation. But the jurisdiction is conferred upon an existing court.

The Legislature may provide that particular causes may be tried before one or more judges of any court. The history of statutory changes respecting the trial of indictments for capital offences, from the original requirement that all such trials must be before this court sitting *en banc* to the present provision that they be had before a single judge of the Superior Court, is an illustration of the power of the Legislature in this regard. *Commonwealth* v. *Phelps*, 210 Mass. 78. The authority of the Legislature to transfer jurisdiction from justices of the peace to the judges of the Police Court and conferring upon the latter a new name, was confirmed by *Wales* v. *Belcher*, 3 Pick. 508. *Brien* v. *Commonwealth*, 5 Met. 508. It was held in *Dearborn* v. *Ames*, 8 Gray, 1, that jurisdiction over insolvency matters previously vested in elective officers whose election was provided for by the constitution, might be transferred to a regularly constituted court.

There are numerous instances where the hearings must be had before two or more judges. Allusion has already been made to trials of capital cases. Jurisdiction was conferred by R. L. c. 201, § 2 upon three judges of the Superior Court to hear claims against the Commonwealth in excess of $1,000. Provision is made by R. L. c. 157, § 5 for trial of certain civil causes before three judges of the Superior Court. The assignments of the judges to hold the court in all these cases must of necessity be made by the Chief Justice. It is expressly provided by St. 1912, c. 649, § 8, that the three judges of the Municipal Court of the City of Boston to hold the Appellate Division of that court thereby established, shall "be designated from time to time by the Chief Justice" of that court. It never has been suggested in any of the numerous cases which have been appealed from the Appellate Division of that court that there was anything unconstitutional in its organization. The most ancient and familiar illustration of division

of work is in the Supreme Judicial Court, where constantly certain justices are sitting as the quorum of the full court and others are holding court as single justices. It requires no argument to demonstrate that the designation of the justices to sit as the full court is a judicial duty.

The circumstance, that under the instant statute the three judges assigned are to hear all the election petitions brought during the year, is immaterial in this connection. It is a well known practice for the assignments of judges to specific duties to be made for the period of a year.

It is an appropriate function of the office of Chief Justice to make such assignments as are required by this statute. It is a detail in the efficient administration of justice by courts composed of several judges that the Chief Justice should arrange a division of work among the different judges in such way as to promote the transaction of the business of the court in the most satisfactory manner. It is the performance of a strictly judicial duty.

No new court is established and no new judges are required by the corrupt practices act. An existing court is given jurisdiction of a new kind of litigation, and provision is made for designation in the ordinary way of judges already commissioned, to perform the duties arising from the new kind of jurisdiction. The conclusion is imperative that the act is not violative of the constitutional requirement that all judges shall be appointed by the Governor.

It is not necessary to inquire whether the subject of elections is so much in the nature of a political question that the Legislature is unlimited in its power to establish tribunals and fix their jurisdiction to deal with election to public office, and may even treat it as an executive or administrative function and not so judicial in character as necessarily to be vested in the courts. See in this connection *State* v. *Lewis,* 51 Conn. 113; *Williamson* v. *Lane,* 52 Texas, 335; *Lynch* v. *Chase,* 55 Kans. 367, 371; *State* v. *Hawkins,* 44 Ohio St. 98, 109; *Ewing* v. *Filley,* 43 Penn. St. 384, 390. Nor is it necessary to consider whether the principle of *Young* v. *Blaisdell,* 138 Mass. 344, may be applicable.

(b) The right of trial by jury as secured by the Constitution is not denied by the act. The Declaration of Rights by art. 15

holds sacred the right to a trial by jury "In all controversies concerning property and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised." It was decided in *Attorney General* v. *Sullivan,* 163 Mass. 446, 451, 452, that a public office like that of mayor is not "property" as that word is used in the Declaration of Rights. A public office does not possess the attributes of private property. Any office created by the General Court, and not established by name or tenure by the Constitution, "may be regulated, limited, enlarged or terminated by law, as public exigency or policy may require." *Taft* v. *Adams,* 3 Gray, 126, 130. A public office is not the private property of the person elected to it. It is a public trust, to be held and administered entirely and absolutely for the benefit and in the interest of the people. This rule prevails generally. *Attorney General* v. *Jochim,* 99 Mich. 358, 367. *People* v. *Coler,* 173 N. Y. 103. *Prince* v. *Skillin,* 71 Maine, 361, 365. *Donahue* v. *County of Will,* 100 Ill. 94. *Taylor* v. *Carr,* 125 Tenn. 235. *Mason* v. *State,* 58 Ohio St. 30. *Moore* v. *Strickling,* 46 W. Va. 515, 518. *State* v. *Douglas,* 26 Wis. 428, 432. *Hawkins* v. *Roberts & Son,* 122 Ala. 130. *Gray* v. *McLendon,* 134 Ga. 224, 251, 252. Therefore, it follows that so far as concerns the question of property, no jury trial need be provided in trials as to the title to a public office.

The right to vote also is in its nature political and not property. *Kinneen* v. *Wells,* 144 Mass. 497. Cooley Const. Lim. (7th ed.) 901. See cases collected 1 L. R. A. 111, note.

The election petition provided by the corrupt practices act is not a "suit between two or more persons" in the sense in which those words are used in the Declaration of Rights. The right to contest an election in the manner and to the extent set forth in the instant statute is not either in form or in substance a common law right. It is not in its essence a controversy between two parties in the sense of ordinary litigation. It is in its nature an inquiry into the purity of the election. A corrupt practice is defined by § 368 of the act as amended.*

---

* The provisions referred to are as follows: "A candidate shall be deemed to have committed a corrupt practice who shall, either by himself or by another, violate the provisions of section three hundred and forty-eight relative to the expenditure of money in excess of the amounts therein authorized;

The election petition must be confined to a request for an investigation respecting the matters enumerated in this section of the act. It must be brought by five persons whose only qualification as petitioners is that they were voters qualified by law to vote at the election as to which complaint is made. They have no private interest to subserve. The purity and freedom of elections is fundamental in a republican form of government. Scarcely anything can be conceived of more vital to the public welfare than free and honest elections. An election petition cannot be brought without leave first obtained from a judge who must certify after hearing that he is satisfied that there is reasonable cause not only to believe that a corrupt practice was committed with reference to the particular election, but also that upon the evidence obtainable the corrupt practice may be successfully proved. An election petition once entered in court cannot be discontinued without the consent of the Attorney General. § 366. The judgment entered at the conclusion of the proceeding, if a corrupt practice is found to have been committed, is not in the nature of a remedy for a private wrong but a vindication of an outrage upon the public and a purging of public office from a foul stain. The election is to be declared void and the respondent ousted from office and the office declared vacant. Section 369, as amended by St. 1914, c. 783, § 10. The whole proceeding, throughout, is public rather than private in character. It is in the nature of a quo warranto proceeding. The public,

who shall make a false return in any statement filed in accordance with sections three hundred and sixty-two and three hundred and sixty-three of this act; who shall, either by himself or another, pay or give, or directly or indirectly, promise to a voter any gift or reward to influence his vote or to induce him to withhold his vote; who shall, either by himself or another, aid or abet a person, who is not entitled to vote, in voting or attempting a vote at a primary or election, or in voting or attempting to vote under a name other than his own, or in casting or attempting to cast more than one ballot; who shall either by himself or another fraudulently and wilfully obstruct and delay a voter; who shall, either by himself or another interfere with, hinder or prevent an election officer from performing his duties, forge an endorsement upon, or alter, destroy or deface a ballot; or who shall, either by himself or another, tamper with or injure or attempt to injure any voting machine or ballot box to be used or being used in an election, or shall prevent or attempt to prevent the correct operation of such machine or box."

instead of being represented at the initiatory stages by the Attorney General, is in effect represented by the five voters acting not wholly upon their own volition but upon authorization from the court; and after the bringing of the petition the Attorney General has a limited control over the proceedings. It is no more a suit between persons than is a petition for quo warranto which in *Attorney General* v. *Sullivan,* 163 Mass. 446, 451, was held not to be such suit. In this respect the case at bar is governed by that decision and the petitioner has suffered no legal wrong in being denied a trial by jury. *Kansas* v. *Ziebold,* 123 U. S. 623, 673. See also *Carleton* v. *Rugg,* 149 Mass. 550. Since this is not a pursuit of an individual right, but essentially an inquest into a matter of public import, it does not come within the definition of suit given in *Worcester Color Co.* v. *Henry Wood's Sons Co.* 209 Mass. 105.

(c) The election petition is not criminal in its form. It is expressly provided that such petitions shall be governed by the rules of equity practice and procedure, so far as applicable, in the absence of special rules of court. The act makes distinct provisions in other sections for criminal prosecutions and the election petition throughout is treated as civil in its nature. Since it is in the nature of a quo warranto, it is a civil proceeding and not a criminal prosecution. That has been decided. *Attorney General* v. *Sullivan,* 163 Mass. 446, 449. *Ames* v. *Kansas,* 111 U. S. 449, 460. See also *State* v. *Thompson,* 91 Minn. 279, and *State* v. *Moores,* 56 Neb. 1. But it is contended that a punishment criminal and infamous in its nature is imposed by the act and hence that it is obnoxious to art. 12 of the Declaration of Rights which guarantees a trial by jury in such cases. It is provided by § 497 of the act as amended by St. 1914, c. 783, § 12, that "Whoever is found by final judgment upon an election petition . . . to have committed a corrupt practice, and shall, in accordance with such finding, forfeit the office to which he has been elected, or whoever is convicted in a criminal proceeding of violating any provision of law relating to corrupt practices in elections shall be disqualified as a voter for a period of three years following the date of his conviction, and shall be deemed ineligible to hold public office for said period."

It is urged that deprivation of the right to vote and to hold pub-

lic office for a period of three years, as a consequence of the finding of a corrupt practice having been committed by the defendant in an election petition, is a criminal or infamous punishment. This question must not be treated by itself alone but must be considered in connection with the Fortieth Amendment to the Constitution, which became operative in 1912. That amendment added a new class to those citizens from whom the right of franchise is withheld by art. 3 of the Amendments, namely, "persons temporarily or permanently disqualified by law because of corrupt practices in respect to elections." The effect of this amendment was to confer upon the General Court power to declare by general law disfranchisement as an accompaniment to the commission of corrupt practices in elections. It did not confine or limit its powers in this respect to the establishment of the fact of corrupt practice by criminal rather than by civil proceedings. It conferred by implication the power in broad terms. It gave ample discretion to the Legislature as to the means to be employed for the ascertainment of the fact, by any constitutional means, of a corrupt practice having been committed. It authorized the Legislature to attach disfranchisement to one who had been found by any constitutional means to have violated his public duty by corrupt practices. It places disfranchisement for corrupt practices in connection with elections upon the same footing as disfranchisement because of being a pauper or under guardianship. Manifestly a trial by jury is not required to determine whether one shall be a pauper or placed under guardianship simply because deprivation of the right to vote follows as a result of that status. See *Dowdell, petitioner,* 169 Mass. 387; *Sporza* v. *German Savings Bank,* 192 N. Y. 8. Pauperism and guardianship as matter of common knowledge have been generally established by proceedings in which there is no trial by jury. The circumstance that the Fortieth Amendment does not automatically attach disqualification from voting to all persons found to have committed corrupt practices, but leaves that matter to be settled from time to time by general law, gives no additional constitutional rights to the individual. He cannot demand on that account as a constitutional right that this matter be settled by a jury when he is not otherwise entitled to it. Therefore, it is needless to consider the bearing in this connection of *United States* v. *Waddell,*

112 U. S. 76, *Ex parte Wilson,* 114 U. S. 417, and *People* v. *Kipley,* 171 Ill. 44, 72, relied on by the petitioner, or to discuss whether deprivation of the right to vote and to hold office as isolated factors without the imposition of fine or imprisonment constitute infamous punishment.

Of course the Legislature cannot by a mere change of name or of form convert that which is in its nature a prosecution for a crime into a civil proceeding and thus deprive parties of their rights to a trial by jury. The Constitution cannot thus be trifled with. *Stockbridge* v. *Mixer,* 215 Mass. 415. But there is nothing to prevent the Legislature from enlarging proceedings and remedies in their nature civil, so as to include new matters of the same general character. *Brown's Case,* 173 Mass. 498. *Young* v. *Blaisdell,* 138 Mass. 344. *Renado* v. *Lummus,* 205 Mass. 155, 158. In view of the principles declared in *Attorney General* v. *Sullivan,* 163 Mass. 446, and *Ames* v. *Kansas,* 111 U. S. 449, and in other cases before cited, it is unnecessary to examine *State* v. *Markham,* 160 Wis. 431; *S. C.* 162 Wis. 55, and kindred decisions, or to determine whether in the light of differing constitutional provisions they are inconsistent with the conclusion here reached.

(d) Nothing contrary to the Constitution is perceived in the further provision that one found to have committed corrupt practices shall be deemed ineligible to hold public office. The privilege of voting is so closely connected with the right to hold office that power to deprive of the former may well include the latter. See *Opinion of the Justices,* 7 Mass. 523; *State* v. *Van Beek,* 87 Iowa, 569; *State* v. *Smith,* 14 Wis. 497. Moreover, the power of the Legislature to determine the qualifications required of those elected to fill municipal offices is ample and need not be uniform throughout the Commonwealth. *Graham* v. *Roberts,* 200 Mass. 152, 154, 155. *Cole* v. *Tucker,* 164 Mass. 486. It follows that the act imposes no unconstitutional limitations upon the right to vote or to hold office.

(e) It is not open to serious question that the acts described in the statute as corrupt practices are well within the scope of those words as used in the Fortieth Amendment.

(f) The provision that election petitions shall be entered in the Superior Court in Suffolk County is not violative of any constitutional provision. The General Court is given full power and

authority by c. 1, § 1, art. 3 of the Constitution, — "to erect and constitute judicatories and courts of record or other courts." This ample grant includes by necessary implication power to fix the territorial limits within which such courts shall exercise jurisdiction and the places in which they shall be held. Having created by the instant statute a new kind of civil litigation, there is no basis in the Constitution for limiting the right of the Legislature to say that such causes shall be entered in Suffolk County, where the Superior Court always is in session. The right of the petitioner "to obtain right and justice freely" as guaranteed by art. 11 of the Declaration of Rights is not impaired thereby. The Superior Court being a court of general jurisdiction, there is nothing to prevent the respondents in the exercise of their discretion from hearing election petitions where the public interests require.

(g) It follows from what has been said, without further discussion, that there is nothing in the challenged portions of the act which is in conflict with art. 9 of the Declaration of Rights to the effect that "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments." The whole purpose of the act is to promote and insure the freedom of elections by discouraging the improper influence of elections and the pollution of the ballot through corrupt practices.

(h) The contention that the petitioner is denied the equal protection of the laws is untenable. It is elementary that the General Court may make reasonable classifications in selecting the subjects of legislation and determining what shall be included within designated inhibitions. Such classification does not violate the constitutional requirement for equal protection of the laws unless "plainly and grossly oppressive and unequal, or contrary to common right." *Oliver* v. *Washington Mills*, 11 Allen, 268, 279. A classification, general in its nature, will not be held to be unequal when there appears to be reasonable ground for it, but only when it seems to be simply arbitrary, based upon no sound distinction and not founded upon any natural difference or rational discrimination. See *Commonwealth* v. *Libbey*, 216 Mass. 356, 358; *Young* v. *Duncan*, 218 Mass. 346, 353; *Bogni* v. *Perotti*, 224 Mass. 152, 157; *Tax Commissioner* v. *Putnam*, 227 Mass. 522, and cases cited

in each of these decisions.   It is impossible in the nature of things
to remove from office as a consequence of corrupt practices any
except those who have been elected.   Disfranchisement and
ineligibility to hold office attach equally to everybody convicted
of the violation of the criminal provisions of the act.   The cir-
cumstance that no like civil proceeding is provided against de-
feated candidates for public office does not render the act unequal
in a constitutional sense.   The successful perpetration of a wrong
ordinarily is punished in law by a more severe penalty than a
thwarted attempt to commit the same wrong.   This is true even
in prosecutions for crimes, although the moral turpitude may be
as great in one case as in the other.

(i) There is no constitutional inequality in the provision that
election petitions shall be brought and may be heard in Suffolk
County, while prosecutions for criminal violation of the election
laws must be in the county where the crime is alleged to have been
committed.   Misdemeanors may be tried and finally disposed of
in local courts, while felonies of a certain magnitude can be dis-
posed of finally only at the county seat, even upon plea of guilty.
Similar differences as to places of trial are found between the Pro-
bate Courts, the Land Court, the Superior Court and the Supreme
Judicial Court sitting at *nisi prius.*

(j) The limitation in § 371 of the act as amended by St. 1914,
c. 783, § 11, excepting from its operations elections of town offi-
cers in towns of less than ten thousand inhabitants, does not
impair the constitutional validity of the act.   The New England
town meeting system of elections and government in compara-
tively small communities is proverbial as one of the finest illustra-
tions of practical democracy.   The intimate knowledge that each
voter in such comparatively small communities is likely to possess
touching the honesty and general qualifications of his fellows
and of all candidates for election to public office well may have
been regarded as the best security against political corruption.   The
difference in this respect between large and small municipalities
furnishes a manifestly reasonable line of demarcation.   The pre-
cise point at which that line is drawn in the present instance
clearly is not irrational.   *Cole* v. *Tucker,* 164 Mass. 486.   *Opinion
of the Justices,* 138 Mass. 601, 603.   *Cunningham* v. *Mayor of
Cambridge,* 222 Mass. 574, 577.   *Brown's Case,* 173 Mass. 498.

*Hayes* v. *Missouri,* 120 U. S. 68.  *Mallett* v. *North Carolina,* 181 U. S. 589.  *Ocampo* v. *United States,* 234 U. S. 91.

(k) The act is not in derogation of the constitutional powers of the Supreme Judicial Court.  It is not necessary to discuss this subject at large.  This court is recognized as the court of highest final decision by § 10 (*d*) of said c. 783.  It is not necessary to determine the extent or nature of the powers of this court to correct errors of law committed by the judges of the Superior Court if in any case there should be an unreasonable refusal to report a question to this court.  This conclusion does not shake in any degree what was said by Chief Justice Shaw in *Commonwealth* v. *Anthes,* 5 Gray, 185, 232–236, as to the basis in the Constitution for the Supreme Judicial Court and the scope of its general powers.  The strength of that discussion and reasoning stands unimpaired.

(l) The act is not in conflict with any provision of the Federal Constitution.

The trial by jury secured by the Seventh Amendment to the Federal Constitution relates only to the courts of the United States.  *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467, and cases cited at page 471.  *Walker* v. *Sauvinet,* 92 U. S. 90.

(m) Trial by jury is not essential to the due process of law secured by the Fourteenth Amendment to the United States Constitution.  *Montana Co.* v. *St. Louis Mining & Milling Co.* 152 U. S. 160, 171.  *Dowdell, petitioner,* 169 Mass. 387.  The instant act purports to afford to all defendants in election petitions a full and fair trial before impartial judges according to fixed laws applicable alike to all persons similarly situated.  This is a sufficient compliance with the Fourteenth Amendment.  *Marchant* v. *Pennsylvania Railroad,* 153 U. S. 380.

(n) The right to hold an elective public office is not a property right within the meaning of the Fourteenth Amendment to the Federal Constitution.  If the petitioner should be deposed from the office of mayor by act of the Legislature or by any judicial proceeding in the courts founded on such act, no property right secured by that amendment would be invaded.  That was settled after great deliberation, with ample review of the authorities and a full discussion of fundamental principles, in *Taylor* v.

*Beckham,* 178 U. S. 548, 575, 577, *Attorney General* v. *Tillinghast,* 203 Mass. 539, 545.

(o) It was said by Chief Justice Field in *Stone* v. *Smith,* 159 Mass. 413, "It is settled that the right to vote is not one of the privileges or immunities of citizens of the United States within the meaning of Art. XIV of the Amendments to the Constitution of the United States. *United States* v. *Cruikshank,* 92 U. S. 542. *United States* v. *Reese,* 92 U. S. 214. *Ex parte Yarbrough,* 110 U. S. 651. *Minor* v. *Happersett,* 21 Wall. 162." It follows that the provisions of the present act as to deprivation of the right to vote and to hold office are not in contravention of the United States Constitution. *Guinn* v. *United States,* 238 U. S. 347, 362, 363: *Myers* v. *Anderson,* 238 U. S. 368.

(p) It was held in *Dinan* v. *Swig,* 223 Mass. 516, that so much of St. 1914, c. 783, § 10, as undertakes to impose upon the courts the duty of inquiry into corrupt practices of members of the General Court was contrary to c. 1, § 3, art. 10 (and see c. 1, § 2, art. 4) of the Constitution which makes each branch of the General Court the final judge of the returns, elections and qualifications of its own members. It is a well settled principle of constitutional law that one part of a statute may be contrary to the Constitution, while the rest may stand as valid, provided the two parts are distinct and in their nature separable the one from the other and are not so interwoven and mutually dependent as to require the belief that the Legislature would not have enacted the one without the other. *Warren* v. *Mayor & Aldermen of Charlestown,* 2 Gray, 84, 98, 99. *Commonwealth* v. *Petranich,* 183 Mass. 217, 220. *County of Berkshire* v. *Cande,* 222 Mass. 87, 90, 91. *Salisbury Land & Improvement Co.* v. *Commonwealth,* 215 Mass. 371, 380. *Berea College* v. *Kentucky,* 211 U. S. 45, 55. *International Text Book Co.* v. *Pigg,* 217 U. S. 91, 113. It seems plain that the provisions as to corrupt practices of members of the General Court are quite distinct and separable from the rest of the act and have no necessary and inherent connection with its other parts. The section in question dealt with that matter differently from the way in which the act dealt with other corrupt practices. The Legislature evidently recognized that they constituted two different classes of officers under the Constitution and must be treated differently. The failure of the effort to include members of the Legislature has

little connection with the rest of the statute, which can stand precisely as enacted in its application to a large number of highly important offices. A similar decision upon this point was made in *Diehl* v. *Totten*, 32 No. Dak. 131.

· It is manifest that the election petition against the petitioner does not raise questions as to the right to free speech and freedom of the press. Although he has referred to these questions, he has not argued them at any length and doubtless they are not open to him. *McGlue* v. *County Commissioners*, 225 Mass. 59, and cases collected at page 60. *Rail & River Coal Co.* v. *Industrial Commission of Ohio*, 236 U. S. 338, 349. It is, therefore, unnecessary to consider them. See *Adams* v. *Lanadon*, 18 Idaho, 483; *State* v. *Pierce*, 163 Wis. 615; *Ex parte Harrison*, 212 Mo. 88.

4. It has been assumed in favor of the petitioner in the discussion thus far, but without examining critically the matter of remedy, that prohibition would be open to him. But it is plain that the fourth general point urged by him, — namely, that the subpoena having been made returnable fifteen instead of fourteen days after the filing of the petition, he cannot be held to answer the election petition, — cannot properly be considered on a petition for a writ of prohibition. The principles which govern the issuance of that extraordinary writ are well settled. It will not be granted if the Court or tribunal against which it is sought has jurisdiction of the cause or matter which it proposes to adjudicate. Prohibition lies only to restrain a clear excess of jurisdiction about to be committed against one who has not submitted thereto where there is no other adequate remedy. It does not issue to correct or restrict errors or irregularities of a tribunal which is acting within its jurisdiction, although proceeding improperly in the exercise of that jurisdiction. It can be invoked to prevent a court from exercising a jurisdiction which it does not possess. It will not be granted to remedy the errors of a judicial tribunal acting within its jurisdiction, but lies only to restrain such tribunal from acting outside its jurisdiction. *Washburn* v. *Phillips*, 2 Met. 296, 298, 299. *Connecticut River Railroad* v. *County Commissioners*, 127 Mass. 50. *Hyde Park* v. *Wiggin*, 157 Mass. 94, 99. *Tehan* v. *Justices of the Municipal Court*, 191 Mass. 92. *Welch* v. *Fox*, 205 Mass. 113. *Mayor of Somerville* v. *Justices of the Police Court*, 220 Mass. 393, 396. *Ex parte*

*Oklahoma,* 220 U. S. 191, 208.   It has been held in the application of these principles that, where a tribunal is acting under an unconstitutional statute, it may thus be restrained.   *Connecticut River Railroad* v. *County Commissioners,* 127 · Mass. 50.   It already has been pointed out that the election petition here complained of is pending before a legally constituted court, which has jurisdiction over the subject matter.   The petitioner has appeared specially in answer to the election petition and has pleaded specially the matter of which he here complains.   But he brought his present petition within a few days after filing that special appearance and plea, without waiting for the Superior Court to pass upon its merits.   It appears from the record that immediately upon the filing of the present petition all proceedings upon the election petition were suspended.   The matters set out in the special plea of the petitioner in the election petition are clearly within the jurisdiction of that court.   It is provided by the corrupt practices act, § 369, as amended by St. 1914, c. 783, § 10 (*d*), that "Upon an election petition the decision of the three justices of the Superior Court assigned as aforesaid, or of a majority of them, shall be final and conclusive upon all matters in controversy, whether interlocutory or final, and whether in matters of fact or matters of law.   But the said justices, or a majority of them, may in their discretion, after a finding of facts, either of their own motion or at the request of either party, report the case to the Supreme Judicial Court for determination by the full court."   Without passing upon the scope or signification of these provisions, it is not open to question that jurisdiction of this matter is vested in the Superior Court.   There is no suggestion that the petitioner's special plea will not be considered on its merits by the Superior Court and decided according to its view of the law.   It is an indubitable result of well settled principles that this point is not open to the petitioner in this proceeding.

*Petition dismissed.*