### JAMES W. BROWN'S CASE.

Suffolk.    January 26, 27, 1899. — May 23, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Habeas Corpus — Constitutional Law.*

The St. 1898, c. 549, providing that proceedings may be had in any police, district, or municipal court of the district in which a judgment debtor resides, by which after notice, proof that the debt is for necessaries furnished to the debtor or his family, and an examination, a decree may be made fixing the time, place, and amount of payments to be made by the debtor, and that failure without good cause to comply with the decree shall be treated as a contempt of court, to be proceeded against as courts of equity are accustomed to proceed, is constitutional.

PETITION, filed December 28, 1898, for a writ of habeas corpus to the keeper of the jail in Suffolk. Hearing before *Knowlton,*

J., who, at the request of the parties, reported the case for the consideration of the full court. The facts appear in the opinion.

The case was argued at the bar in January, 1899, and afterwards was submitted on briefs to all the justices, except *Field*, C. J.

*J. P. Leahy*, for the petitioner.

*C. H. Stebbins*, (*F. S. Harlow* with him,) for the Commonwealth.

HOLMES, J. This is a petition for a writ of habeas corpus. The petitioner is held by virtue of a mittimus issued under St. 1898, c. 549, and the only question argued is whether that statute is constitutional. The statute provides that proceedings may be had in any police, district, or municipal court of the district in which a judgment debtor resides, by which after notice, proof that the debt is for necessaries furnished to the debtor or his family, and an examination, a decree may be made fixing the time, place, and amount of payments to be made by the debtor, and that failure without good cause to comply with the decree shall be treated as a contempt of court, to be proceeded against as courts of equity are accustomed to proceed.

The first objection taken to the act is that it is operative only in those portions of the Commonwealth which are within the jurisdiction of some police, district, or municipal court, and that a number of towns are outside any such jurisdiction, having only trial justices. It is suggested that for this reason the statute creates special privileges, imposes special burdens, and denies the equal protection of the laws to all. But it is settled that municipal regulations of this sort, based simply on the practical necessities of administration in dealing with a population unequally distributed over the State, do not conflict with the Fourteenth Amendment of the Constitution of the United States. *Missouri* v. *Lewis*, 101 U. S. 22. *Kentucky Railroad Tax Cases*, 115 U. S. 321, 338. *Hayes* v. *Missouri*, 120 U. S. 68. There is even less pretence for finding any inconsistency with the less specific expressions relied on from the State Constitution. See *Commonwealth* v. *Worcester*, 3 Pick. 462; *Roberts* v. *Boston*, 5 Cush. 198.

Next it is objected that the law creates a preferred class of creditors. Why not? Such preferences always have existed; — preferences of specialty creditors over creditors by simple con-

tract in former days ; — preferences of certain classes of debts in the settlement of bankrupt or insolvent estates, and in administration, at the present time ; — special privileges in the way of lien given by statute to laborers and material men. We know of nothing to prevent the Legislature making the purchase of the necessaries of life easier by giving special remedies against those who wilfully try to avoid paying for them.

Finally, it is suggested that the statute is contrary to the Twelfth Article of the Massachusetts Declaration of Rights, as depriving defendants of their liberty or estate otherwise than by the judgment of their peers or the law of the land. This seems to a majority of the court even less tenable than the previously mentioned objections. The statute applies only to judgment debtors. A valid judgment is assumed to have been obtained. One was obtained in this case. The petitioner might have had a jury if he had wanted it upon the merits of his case. But after they had been tried, the application of this article of the Declaration of Rights is at an end. It does not apply to the procedure of execution. The statute, if the Legislature had seen fit, might have revived unconditional imprisonment in case of failure to pay the judgment, and we apprehend that it would make no difference whether the statute should treat the seizure of the body as satisfaction of the debt, as at common law, or, after the fashion of equity, as a means of compelling a contumacious debtor to obedience. The statute does not go so far. It gives the debtor the benefit of an examination, and does not subject him even to the chance of imprisonment unless the court is satisfied that the debtor is able to pay. It does not imprison him unless it is satisfied further that he is failing to obey the decree without just cause. Looking at the matter apart from the distinctions of law and equity, it seems to us very plain that, when we have reached the stage of execution, what the statute might do out and out in the first place it may do with such mitigating conditions as the Legislature chooses to grant, and that the presence of such a condition cannot make void what would be good without it. It is a pure mitigation to allow the question to be raised whether the failure to obey the decree or to satisfy the judgment is without just cause. The Legislature very properly intrusted the answering of it to the judge, instead of calling in a

second jury. It was not the petitioner's constitutional right to have it asked at all. Still less was it his right, if it was asked, to have it answered by the jury rather than by the judge.

Looking at the matter from a somewhat different point of view, What is to hinder the Legislature from enforcing payment of debts for necessaries by decree instead of by judgment, if so minded, if the trial by jury on the merits of the case is saved ? It cannot be pretended that the Legislature cannot bring new subject matter under the operation of the injunction. It may to-morrow authorize the prevention of a libel in that way, and may make the payment of a debt a matter of specific performance, just as the courts, of their own motion, have made the transfer of chattels. Furthermore, what the Legislature may put into the power of a chancery court it may put into the power of a district judge, endowing him to that extent with some of the authority of a chancery court.

When it is suggested that imprisonment for contempt is a punishment which is inflicted without trial by jury, the answer is, in the first place, that a court is not obliged by the Constitution to resort to a jury to find out whether a defendant is obeying or disobeying its decree; *State* v. *Becht*, 23 Minn. 411, 414; and, secondly, that it is splitting hairs over words to call the imprisonment a punishment for the purpose of drawing any conclusion from the name. The imprisonment is a means of compelling a contumacious defendant to obey. He can stop it by obedience. Until he obeys, he must look to the statute, not to the Constitution, for the limit of his liability. See *Kennesaw Mills Co.* v. *Walker*, 19 S. C. 104; *Eikenberry* v. *Edwards*, 67 Iowa, 619; *Ryan* v. *Kingsbery*, 88 Ga. 361.

*Prisoner remanded.*