## 9493

### HARMON *ET AL.* v. BARBER *ET AL.*

#### (89 S. E. 636.)

BANKS AND BANKING—COLLECTIONS—FAILURE TO COLLECT—NEGLIGENCE.—
Where a bank's clearing house sent a check deposited by the drawer
for collection directly to the drawee, who marked it "paid" and sur-
rendered it to the drawer, the bank, failing to collect the amount
from the debtor, but crediting the amount to the depositor, who
drew it out, could not hold the depositor or his estate liable, where
there was a bank in the town where drawee lived, and depositor was
not notified of the failure to collect until about 16 days after his
deposit, and received no dividend from the bankrupt estate of the
drawee, and it did not appear that claim for such liability was made
by bank until after depositor's death.

Before PRINCE, J., St. Matthews, Fall term, 1915. Af-
firmed.

Action by Viola Harmon and others against Alice Barber
and others to settle the estate of J. P. Barber, deceased, in
which Bank of Cameron filed a claim. From judgment dis-
allowing the claim, the bank appeals.

*Messrs. Wolfe & Berry,* for appellant, cite: *As to liability
of drawer:* 10 Wall. 604; Thompson Bills, 409; 5 A. & E.
Enc. of L. (2d ed.) 1044. *Manner of presentment:* 42 L.
R. 455; 16 C. B. (N. S.) 288; 92 L. R. 428; 78 N. Y. 269;
80 N. Y. 100; 13 L. R. A. 303; Morse on Banks & Banking,
secs. 231 and 427; Tiedeman Commercial Paper, sec. 444;
2 Daniel's Neg. Inst., sec. 1559; 44 L. R. A. 240; 5 R. C.
L. 514; 135 Iowa 605; 23 Am. Rep. 632. *Notification of
dishonor within reasonable time:* 92 S. C. 440; 97 S. C.

FOOTNOTE.—See article on "The Bank as a Collection Agent—Due Care
in the Selection," in 82 Central Law Journal, 405. Also, as to liability
of bank taking commercial paper for collection for default of correspond-
ent, see notes in 52 L. R. A. (N. S.) 608 to 667; for negligence in send-
ing paper to drawee bank for collection, see 5 A. & E. Ann. Cas. 658, 8
*Id.* 372, 23 A. & E. Ann. Cas. 1912b, 123.

335; 2 N. & McC. 433; 5 A. & E. Enc. of L. (2d ed.) 1031, 1044, 1046; 3 *Ib.* 805, 806, 814; Parson's Bills & Notes 72, 73 and 74. *Charging check to drawer, not payment:* 34 Am. Rep. 534; 44 L. R. A. 240. *Negligence in forwarding check:* Brady Checks 70 and 71. *Insolvency of drawee:* 97 S. C. 339; distinguishes 3 Hill 77; 92 S. C. 91 and 440.

*Mr. Wm. L. Glaze,* for respondent, cites : *As to negligence of bank as collecting agent:* 92 S. C. 91 and 440; Bolles Modern Law of Banking, 548, 549, 577; 56 Fed. Rep. 967; 76 Minn. 136; 3 Hill 77; 112 U. S. 276. *Delay in presentation:* 2 Bolles Modern Law Banking, p. 603; Brady Law of Checks, pp. 279 and 285, secs. 195 and 199; 109 Ala. 326; 221 Ill. 319; 76 Minn. 136.

*Mr. W. A. Isgett,* also for respondent, cites : 4 A. & E. Enc. of L. (2d ed.) 483; 82 Am. St. Rep. 291; 46 *Ib.* 672.

August 11, 1916.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

J. P. Barber lived at Cameron, S. C. On the 26th day of February, 1912, he went to the Bank of Cameron and deposited his check on the Lexington Savings Bank, at Lexington, S. C., for $1,000. On the same day the Bank of Cameron forwarded the check to its "clearing house," Southern National Bank, of Wilmington, N. C., for collection. The Wilmington bank sent the check direct to the Lexington Savings Bank for collection. The books of the Lexington Savings Bank showed an overdraft of Barber of about $300, but it marked the check "paid" and surrendered it to Mr. Barber. This left an overdraft of about $1,300. The Lexington Savings Bank did not send the money to the Wilmington bank. The Lexington Savings Bank failed on March 22, 1912. On the 4th of March the Bank of Cameron notified Mr. Barber of the nonpayment of the check. Mr. Barber is dead, and this is a suit to settle his estate, and in this suit the Bank of Cameron presents its claim for the face of the check and interest. The Lexington Savings

Bank was not an incorporated bank, but was the private business of Mr. W. P. Roof. Mr. Roof had other business enterprises, and among them was a cotton business. Mr. Barber sold to Mr. Roof a large amount of cotton, amounting to some $13,000. There were various items of indebtedness on both sides, but, after deducting the debts, including this overdraft, Mr. Roof was still indebted to Mr. Barber, on the various counts, about $6,000. Mr. Roof, with all of his business, went into bankruptcy, and Mr. Barber's claims were proven. In those proceedings the check in question was charged against Mr. Barber as paid. There was another bank in Lexington, but the Wilmington bank sent the check to the Lexington Savings Bank on which it was drawn. This bank marked it "paid," charged it to Barber's account, and delivered it to him. The question between the Bank of Cameron and Mr. Barber's estate is, which shall lose the money? In *Harter* v. *Bank,* 92 S. C. 444, 75 S. E. 697, we find:

"The principal question of law involved was settled against appellant, and in accord with the decision of the Circuit Court, in *Bank* v. *Cooper,* 91 S. C. 91, 74 S. E. 366, where the Court said: 'In 1884, the Supreme Court of the United States adopted the English rule that a bank receiving a draft or bill of exchange for collection is liable for neglect of duty occurring in its collection, whether arising from the default of its own officers, or from that of its correspondent, or an agent employed by such correspondent, in the absence of any express or implied contract varying such liability. *Exchange Nat. Bank* v. *Third Nat. Bank,* 112 U. S. 276 (5 Sup. Ct. 141), 28 L. Ed. 722. * * *' We adopt this rule as the just one, because it is in accord with the common understanding of bank and customer in their dealings. In depositing his paper the customer ordinarily surrenders all control of it, and has nothing to do with the means taken by the bank to collect. On the other hand, the bank undertakes the collection for its own profit, takes its own methods, and selects

collecting bank or any of the intermediate banks as agents
of the depositor, or to put upon him loss due to their
default."

its own agents.    It seems, therefore, illogical to regard the

In order to arrive at a just determination of this case, it is
well to eliminate certain misleading names.    The Lexing-
ton Savings Bank was not in any true sense a bank.    It
was W. P. Roof.    The cotton business was W. P. Roof.
It was merely a matter of bookkeeping to call the balance
on the bank books an overdraft.    The dealings were with
Mr. Roof, an individual.    Mr. Barber was not overdrawn
on his accounts with Mr. Roof by $6,000.    There is a con-
flict of authorities as to whether it is or is not negligence
*per se* to send a check for collection to the bank on which it
is drawn.    The weight of authorities is that it is negligence
to do so, and when it is done and loss occurs, the bank, and
not the depositor, shall lose.    This is a stronger case.    There
was a bank in Lexington, which was not a bank in name
only.    The Wilmington bank, of its own free will, sent the
check on Mr. Roof to Mr. Roof.    Mr. Roof marked it
"paid," and surrendered it to Mr. Barber.    It may be said
that Mr. Roof had no right to substitute his own irrespon-
sibility for Mr. Barber's responsibility.    That sounds well
until we note in the record that Mr. Shealy, with a cashier's
check of the "Lexington Savings Bank" failed to get his
money even after repeated presentations at the "Lexington
Savings Bank."    If the bank account had shown that Mr.
Barber had money enough to his credit to have paid the
check, would it have made any difference?    It did not in
Mr. Shealy's case.    The check was given on the 26th of
February.    It was delivered to Mr. Barber, marked "paid,"
on the 4th of March, and not until the 14th of March was
Mr. Barber notified that the Bank of Cameron had not
received its money.    Mr. Barber, or his representatives,
proved claims against the bankrupt estate, but got no divi-
dends on this $1,000.    The record does not show that any

notice of this claim was given until Mr. Barber was dead and his estate in process of settlement. The bank in Wilmington trusted Mr. Roof to collect a claim against himself. Charters are made a subject of public record, and the collector is charged with knowledge that it is dealing with an unchartered institution, and when the collector puts himself completely in the power of the debtor, it must take the consequences.

The judgment is affirmed.