April 6, 1931. The opinion of the Court was, delivered by
Upon further consideration of this matter, in connection with the opinion filed February 17, 1931, it is ordered that said opinion be withdrawn and the following substituted in lieu thereof:
An opinion was filed in this case on August 27, 1930, affirming the decree of the Circuit Judge. Thereafter, upon a petition for a rehearing filed by the appellant, an order was passed granting the petition and setting the case down for oral argument at the October term, the order also providing that counsel representing any other interests which may be affected by the decision be allowed to participate in the argument orally or by briefs. The rehearing was had at the October term, at which, in addition to oral arguments and the original briefs of counsel, a brief was filed by a number of attorneys representing interests which would be affected by the decision.
Thereafter, on February 17th, an opinion was filed in which the points under discussion were limited to foreign banks. In view of the fact that counsel representing domestic banks as well as those representing foreign banks fully argued all questions involving the constitutionality of the act as applied to domestic as well as foreign banks, all questions affecting the constitutionality of the act hereinafter quoted have by consent been fully discussed, and are herein considered and decided. *Page 106 
The petitioner, a forwarding bank, claims priority in the distribution of the assets of a bank in the hands of a receiver, under the following circumstances:
A few days before October 27, 1928, certain customers of the Wachovia Bank Trust Company of Winston-Salem, N.C., deposited with it for collection a number of items aggregating $507.60; they consisted of checks drawn by depositors of the People's Bank of Darlington, upon the bank, and were mailed by the Wachovia Bank directly to the People's Bank for collection and remittance. The People's Bank charged the amounts of the checks to the respective depositors, and remitted to the Wachovia Bank a cashier's check for $507.60, drawn upon the National Park Bank of New York. At that time the People's Bank had on deposit in the New York Bank more than enough to pay the cashier's check. On October 29, 1928, the People's Bank closed its doors, which information was received by the New York Bank before the presentation of the cashier's check; they accordingly refused payment of the check. The Wachovia Bank filed its claim with the receiver of the People's Bank, claiming preference in the distribution of the assets of the insolvent bank. The receiver declined to recognize the claim as a preferred one, and paid to the Wachovia Bank its regularpro rata. The Wachovia Bank then intervened in the main cause, and moved for an order recognizing its claim to preference. The receiver filed a return to the petition, and the matter was referred to the Master of Darlington County. He filed a report disallowing the claim to preference, and the matter came on to be heard by his Honor, Judge Dennis, upon exceptions to the Master's report, and from it the Wachovia Bank has appealed to this Court.
The petitioner is claiming priority under the Act of 1927, 35 Stat., 369, which is in full as follows:
"An Act to define the liability of banks doing business in *Page 107 
this State when receiving for collection any check, note or other negotiable instrument.
"Section 1. Rights of Banks in Forwarding Items forCollection — Proviso. — Be it enacted by the General Assembly of the State of South Carolina: Any bank, banker or trust company hereinafter called bank, organized under the laws of, or doing business in this State, receiving for collection or deposit any check, note or other negotiable instrument drawn upon or payable at any other bank, located in another city or town, whether within or without this State, may, at its own option, forward such instrument for collection directly to the bank on which it is drawn, or at which it is made payable, and such method of forwarding direct to the payer shall be deemed due diligence, nor shall it be deemed negligence for such collecting bank to accept from the bank upon which such instrument is drawn, or at which it is payable, its draft upon any other bank, and the failure of such payer bank, because of its insolvency or other default, to account for the proceeds thereof, shall not render the forwarding bank liable thereof, shall not render the forwarding bank liable therefor: Provided, however; Such forwarding bank shall have used due diligence in other respects in connection with the collection of such instrument.
"§ 2. Items Sent for Collection a Trust Fund — Lien. — 
All items sent by a bank, whether located within or without the State of South Carolina, to a bank in South Carolina for collection, are hereby declared to be a Trust Fund, and shall be a prior lien on any unassigned assets of such collecting bank.
"§ 3. All Acts or parts of Acts inconsistent with this Act are hereby repealed.
"§ 4. This Act shall become effective upon its approval by the Governor.
"Approved the 26th day of April, A.D. 1927."
In common parlance the bank which receives from its customers checks, notes, drafts, or other negotiable instruments, to be forwarded through the usual *Page 108 
commercial channels for collection, is known as the forwarding bank, and the bank to which the item is transmitted for collection as the collecting bank. Prior to the passage of the Act of 1927, it was considered highly improper for a bank to forward an item to a bank upon which it was drawn; the forwarding bank which did so assumed the risk of loss thereby. 1 Morse, Bank (6th Ed.), § 236; Harmon v. Barber,105 S.C. 161, 89 S.E., 636. It was also held that a collecting bank was authorized to receive in payment of an item transmitted to it for collection cash only; and that, if it received anything else, it assumed the risk of loss thereby. 1 Morse, Bank. (6th Ed.), § 247.
It will be observed that the title of the Act refers only to forwarding banks, that is, to banks receiving from its customers checks, notes, drafts, or other negotiable instruments, to be forwarded through the usual commercial channels for collection, and limits its application to "banks doing business in this State."
Section 1 of the body of the Act also refers only to forwarding banks, and likewise limits the application of the section to banks "organized under the laws of, or doing business in this State." It is also limited to the handling of checks, notes or other negotiable instruments received by them for collection or deposit, "drawn upon or payable at any other bank, located in another city or town, whether within or without this State."
The section purports to confer upon such banks, handling such paper, certain rights and privileges which theretofore had been expressly denied to banks of any kind; namely, (a) to forward "such instrument" for collection directly to the bank upon which it was drawn; and (b) to accept from the bank upon which "such instrument" was drawn its draft upon any other bank.
Having conferred upon the forwarding bank these rights and privileges, it was needless to provide, as the section specifically does, that the exercise of them should not be deemed negligence on the part of the forwarding bank. *Page 109 
It is obvious that the Act of 1927 was intended to relieve the forwarding bank from a charge of negligence in either of the particulars mentioned.
Section 1 of the Act goes even further than this in protecting the forwarding bank from liability on account of the handling of an item by its correspondent, the collecting bank; it contemplates a situation where the item is transmitted to a correspondent bank who is expected to collect it from the bank upon which it is drawn; the section provides that such correspondent, collecting bank, may accept from the drawee bank its draft upon any other bank and, if such second drawee should prove insolvent, there should be no liability upon the forwarding bank; a most extraordinary proposition.
From the foregoing discussion of the principles applicable, it follows that the Act in question is in violation of the due process clause of the Constitution, in that its enforcement would result in discrimination against: (a) Banks not incorporated or doing business in this State; (b) banks receiving for collection items drawn upon banks doing business in the same city or town; (c) corporations, partnerships, and individuals sending their drafts direct to a bank for collection.
The Act is violative also of Article 17, § 3, of the Constitution of South Carolina, in that it embraces subjects not referred to in the title and not germane to the purposes of the Act as set forth in the title. (Attention is called to the Act of 1930, 36 Stat., 1368, which by its terms is nonretroactive.)
The judgment of this Court is that the decree of the Circuit Court be affirmed.
MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur. *Page 110