## 13411

WITT, REC'R, v. PEOPLES STATE BANK OF SOUTH
CAROLINA *ET AL.*
SAME v. BANK OF SWANSEA *ET AL.*

(164 S. E., 306)

2

*Messrs. Efird & Carroll,* for appellant,

*Messrs. Mitchell & Horlbeck,* for respondents.

May 14, 1932.

The opinion of the Court was delivered by Mr. Justice Bonham.

This proceeding is brought by W. H. Witt as receiver of the closed Bank of Swansea to test the constitutionality of the act of the General Assembly, approved March 28, 1930, found in 36 Statutes at Large, pages 1368-1374, relating to the collection and payment by banks of checks and other instruments for the payment of money. The matter came to the Court in this wise: There were presented to the petitioner, as receiver of the Bank of Swansea, by the respondents, claims for which they demanded payment as of prior right under and by the provisions of the act above cited. Being advised that the claimants were not entitled to the priority of payment claimed by them, and being advised that the constitutionality of that act had not been passed upon by the Supreme Court, and was in doubt, he refused payment of the claims and brought his petition in the Court of Common Pleas for Lexington County asking that the claimants be required to show cause why the said act should not be declared unconstitutional, and the claimants denied the priority of payment which they claimed.

Accordingly Hon. C. J. Ramage, Judge of the Eleventh circuit, issued his rule requiring such creditors of the bank

to show cause as prayed. The South Carolina National Bank of Charleston, one of the respondents, filed its return to the rule which was heard by Judge Ramage in open Court. After consideration, he filed his decree sustaining the constitutionality of the act, dismissing the rule to show cause, and adjudging the respondents entitled to priority of payment. From this decree the receiver appeals upon the exceptions set out in the transcript of record.

The Court is satisfied with the well-considered decree of Judge Ramage, and adopts it as the opinion of this Court, with this exception; where his Honor says: "I adopt Ex. A. C. J. R. by reference, as a part of this decree," this Court inserts from that exhibit an excerpt and makes it a part of the opinion of the Court:

### DECREE OF JUDGE RAMAGE

"The question involved is whether, when items are sent for collection to the bank upon which they are drawn, and such items are charged to the drawers or depositors and paid by the drawee bank by its cashier's check on another bank, and the drawee bank became insolvent before the check on the other bank was paid, whereby payment of the last-mentioned check was refused, the owners of the items are entitled to priority of payment or only participate pro rata with other creditors.

"The petition upon which the rule was issued suggests doubt as to the Act of 1930, 36 Stat. 1368, suggesting that it violates the state constitution as depriving creditors and depositors of the insolvent bank of their property without due process of law, and impairs the obligations of contracts of depositors and stockholders of the insolvent bank.

"Section 13 of the Act appears to be the portion bearing upon the present issues.

"This section provides as follows:

" '§ 13. *(Insolvency and Preferences.)*—1. When the drawee or payor, or any other agent collecting bank shall

fail or be closed for business by the State Bank Examiner or by action of the Board of Directors or by other proper legal action, after an item shall be mailed or otherwise entrusted to it for collection or payment but before the actual collection or payment thereof, it shall be the duty of the receiver or other official in charge of its assets to return such item, if same is in his possession to the forwarding or presenting bank with reasonable diligence.

" '2. Except in cases where an item or items is treated as dishonored by non-payment as provided in Section 11, when a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or items and such drawee or payor shall fail or close for business as above, after having charged such item or items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debted therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank.

" '3. Where an agent collecting bank other than the drawee or payor shall fail or be closed for business as above, after having received in any form the proceeds of an item or items entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books

or on the books of any other bank which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank.' "

"In order to understand the questions involved, it is necessary to refer to the decision of the Supreme Court, filed April 6, 1931, in the cause entitled *Ex parte Wachovia Bank & Trust Co. (J. L. Nettles et al. v. People's Bank of Darlington and G. B. Brasington, Receiver)*, 160 S. C., 104, 158 S. E., 214, 216. The unanimous opinion of the Court by Mr. Justice Cothran, after first setting out the facts in that case, and deciding the questions as applying to domestic banks as well as foreign banks, and setting forth the former Act of 1927, 35 Stat. 369, under which priority of payment was claimed in that case, holds in substance as follows:

" 'The title of the Act refers only to forwarding banks and limits its application to banks doing business in this State. Section 1 of the body of the Act refers only to forwarding banks, and likewise limits the application of the section to banks organized under the laws of or doing business in this State, and is further limited to items drawn upon or payable at any other bank located in another city or town, whether within or without the State.

" 'This section confers upon such banks handling such paper the unusual privilege, without it being deemed negligence, of forwarding the instrument for collection directly to the bank upon which it was drawn, and to accept from the bank upon which such instrument was drawn its draft upon any other bank. That the Act of 1927 was intended to

relieve the forwarding bank from negligence in those cases. * * *"

"That Section 1 of the Act goes even further in protecting the forwarding bank from liability on account of the handling of the item by the collecting bank in that the collecting bank may accept from the drawee bank its draft upon any other bank, and, if such second drawee should prove insolvent, there would be no liability upon the forwarding bank—a most extraordinary proposition. * * * The decision then holds in words as follows:

" 'From the foregoing discussion of the principles applicable, it follows that the Act in question is in violation of the due process clause of the constitution, in that its enforcement would result in discrimination against: (a) Banks not incorporated or doing business in this State; (b) banks receiving for collection items drawn upon banks doing business in the same city or town; (c) corporations, partnerships, and individuals sending their drafts direct to a bank for collection.

" 'The Act is violative also of Article 17, § 3, of the constitution of South Carolina, in that it embraces subjects not referred to in the title and not germane to the purposes of the Act as set forth in the title. (Attention is called to the Act of 1930, 36 Stat. 1368, which by its terms is nonretroactive.)'

"It will be observed that the Court enters into no discussion of Section 2 of the Act, making such items a trust fund, and declaring them a prior lien on any unassigned assets of the collecting bank. The only reference to Section 2 in the opinion of the Court is where the whole Act is set out in full. In other words, the whole Act is knocked out as unconstitutional upon the provisions of Section 1, and the Court did not deem it necessary to consider Section 2, evidently, upon the theory that it necessarily fell with Section 1. In other words, when the foundation is knocked out, the superstructure must necessarily fall with it.

"The determination of the questions involved in the present case must in the first instance necessarily depend upon whether the Act of 1930 successfully obviates the objections pointed out in the foregoing decision to the Act of 1927.

"Let us take up these four grounds separately:

"First. Does the Act violate the due process clause ▌ as discriminating against banks not incorporated or doing business in this State?

"Section 1 of the Act defines the term 'bank' as including any person, firm or corporation engaged in the business of receiving and paying deposits of money within this State.

"In Section 13 of the Act, Subdivision 2, it is provided that the assets of the insolvent bank shall be impressed with a trust in favor of the 'owner or owners of such item or items for the amount thereof  *  *  *  and such owner or owners shall be entitled to a preferred claim.'

"Inasmuch as it is provided in Section 2 that, where an item is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection, and under Section 13, Subdivision 2, the owner or owners of the items are the persons who are given the right to the priority, there seems to be no discrimination whatsoever between banks doing business in this State and foreign banks or between banks and persons, firms, or corporations other than banks. The owners of the items, whether banks, corporations, residents or nonresidents, or what not, are all in the same boat. The only requirement is that they must be the owner or the owners of the items. This clearly meets and overcomes the discrimination pointed out in the Act of 1927. The use of the term 'bank' in Section 1 as limited to one doing business within this State applies only to the insolvent drawee bank against whom the priority is to be enforced. It in no way limits the broad statement the 'owner or owners of the items' who are entitled to the priority or preference, whoever and whatever they may be. The first objection is therefore unquestionably removed in the 1930 Act.

"Second. Discrimination against banks receiving for collection items drawn upon banks doing business in the same city or town.

"Upon this question there can scarcely be a doubt that this point of objection has been remedied in the new Act. The 1927 Act specifically limited its application to an item drawn upon a bank in another city or town. The 1930 Act applies to all cases, whether in the same town or not. In Section 6, Subdivision (a), of the 1930 Act, there is the provision that, when the item is payable in another town or city, it shall be deemed the exercise of ordinary care to forward such item by mail not later than the business day next following its receipt direct to the drawee bank, or to another bank collecting agent, either located in the town or city where the item is payable, or in another town or city. But in the same section, Subdivision (b), provision is made when the item is payable in the same city or town, either by direct presentation or through the clearing house. Still further, Subdivision (c) contemplates any other method of forwarding or presentment consistent with ordinary care. Of course, the reason for making different provisions where the drawee bank is in another city or town is obvious. Where the bank receives check for collection an item drawn upon another bank in its same city, there could be no possible justification or excuse or semblance of ordinary care in parting with the possession of the item by sending it by mail to the other bank in the same city, when it could be presented either at the counter or through the clearing house, or otherwise without running any unnecessary risk. It is different, however, where the item is drawn upon another city or town, for there the collecting bank has to send it to some one, and has to have some agency, correspondent, or medium to present and collect it.

"These provisions for different mode of presentment in the same town from that provided for a bank located in another town involve no discrimination whatsoever in favor of the owners of items who sent them through a bank for

collection as against those owners who presented them in person to the drawee bank or tried to collect them in some other mode or manner. The 1927 Act made a distinction. The present Act of 1930 makes no such distinction. Section 6 covers both classes of cases, and Section 13 dealing with insolvency and preference gives all classes alike—'the owners of the items'—the same right of priority. The only requirement is that they must be the 'owner or owners of the items.' The right of priority is bottomed upon the trust relation and not as in the former Act upon the mode, medium, or locality of presentment and collection. Whether the item is sent by mail to another city or town, or presented in the same city or town, the 'owners of the items' irrespective of who they are, all alike have under the new Act the same right to priority, until the item is finally paid. There is no classification or discrimination.

"Third. Discrimination against corporations, partnerships, and individuals sending their draft direct to a bank for collection.

"It is evident that the Court meant corporations, partnerships, and individuals other than banks. This is covered by what we have said in the concluding portion of the second point above.

"The Act of 1930 is not, like the Act of 1927, limited to cases of the collection and payment of items by banks. There appear in Section 6 of the Act of 1930 provisions making it applicable to all persons, firms, or corporations or others who are 'owners of items' (Section 13), whether they sent their items direct to the drawee bank or deposited them in some other bank for collection, or whatever mode of presentment was resorted to consistent with ordinary care. This objection to the former Act is successfully eliminated.

"Fourth. As to the Act embracing subjects not referred to in the title and not germane to the title and purposes of the Act.

"The Act is entitled 'An Act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money.' In the former Act the title was limited to defining the liability of banks doing business in this State when receiving for collection any check, note, or other negotiable instrument.

"The Supreme Court in its decision did not say in what respects the title was not germane to the purposes of the Act, nor is it apparent from the discussion of the Court in what specific respect the body of the Act failed to comply with the title. What may have been in the minds of the Court, was that, when an item was sent directly to a bank on which it was drawn, it did not receive it for collection, in that, strictly speaking, it could not receive an item for collection from itself, but received it for payment. Or perhaps it was because the provisions for a lien contained in Section 2 went beyond the scope of the title, in that the title related to the liability of banks receiving items for collection to which Section 1 is germane, but Section 2 deals not with any liability of such banks, but with the rights of such banks receiving items for collection to a preference against insolvent payor banks. Also the title was limited to banks doing business in this State, while Section 2 related to all banks. However, the Court does not say whether it meant this ground to apply to Section 2, or Section 1, of the 1927 Act, so that to say the least, the decision is not very definite on this point.

"However that may be, the 1930 Act, allowing a preferred claim for an item upon an insolvent bank, and the declaring of the same to be a trust, has a very wide and general title. It is not limited to cases of collection, but embraces the whole subject of collection and payment. The preferred claim, in the event of insolvency of the bank, is a necessary incident to the collection and payment of checks and other instruments. It arises out of, and only out of, the presentment and payment of items, and not otherwise. It provides for one very common feature or incident to the mode of such payments, when such payment is made by giving a

draft on another bank which is no good and fails to produce actual payment because of the intervening insolvency of the bank giving such draft. It clearly relates to the same and not a different subject. It is one of the commonest occurrences or incidents to the collection and payment of checks or other items. It is expressed in the general title which embraces the whole range of the collection and payment of items. There is no departure; the Act contains nothing which is not intimately interwoven with 'the collection and payment by banks of checks' and other instruments.

"The law of this State is clear that it is not necessary for every detail, incident, and particular of a statute to be expressed in the title. A general title is sufficient to embrace all the incidents germane to the general subject mentioned in the title.

" 'When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the Act without violating this provision of the Constitution.' *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421, 423.

"To the same effect, and upon the further proposition that in determining whether the title sufficiently states the general subject and whether the provisions in the body of the Act are germane thereto, every reasonable construction is resorted to and every reasonable presumption indulged in favor of the validity of the Act. *Spartanburg County v. Miller,* 135 S. C., 348, 132 S. E., 673; *McKiever v. Sumter,* 137 S. C., 266, 135 S. E., 60; *Fleming v. Royall,* 145 S. C., 438, 143 S. E., 162; *Means v. Highway Dept.,* 146 S. C., 19, 143 S. E., 360.

### The Legislature has Power to Provide Preferences and Different Order of Payment for Different Classes of Creditors When not Based on an Unreasonable or Arbitrary Classification

"Statutes of a general nature giving preference to a certain class of creditors have been sustained as not granting special privileges in violation of constitutional provisions. 12 C. J., 1113, citing *Brown's case,* 173 Mass., 498, 53 N. E., 998 (creditors furnishing necessaries) ; *Fitch v. Applegate,* 24 Wash., 25, 64 P., 147 (Act giving laborers liens of wages).

"We have had in this State a statute giving laborers a lien for wages when other creditors are not given such a lien (for instance, Code of Laws, 1922, Vol. 3, Section 5703), the constitutionality of which has never been doubted.

"A statute giving a preference to resident creditors has been held void as depriving nonresidents of privileges enjoyed by them as citizens of other states; but, on the other hand, a statute may be valid which gives preferences, without regard to residence, to certain classes of creditors, as, for example, creditors furnishing necessaries, or creditors having claims for wages. 12 C. J., 1125, citing *Sully v. Am. Nat. Bank,* 178 U. S., 289, 20 S. Ct., 935, 44 L. Ed., 1072; *Brown's case,* 173 Mass., 498, 58 N. E., 998; *Skinner v. Garnett Gold-Mining Co.* (C. C.) 96 F., 735.

"In the case of *State ex rel. Short, Attorney General, v. Johnson,* 90 Okl., 21, 215 P., 945, 947, banking acts provided for a guaranty fund for the protection of the depositors. The legislature passed a statute giving surety companies an equal preference right in this fund with depositors in an insolvent bank. The statute was held unconstitutional, in that the title of the Act did not express the subject, but, on the contrary, the subject of the statute creating such preference was a distinct departure from the general subject and the scheme of the banking laws. The Court, however, said

that was the only constitutional objection to the Act. 'It is our opinion that neither Section 51, Art. 5, Section. 46, Art. 5, Section 32, Art. 5, nor Section 7, Art. 2, of the Constitution, are contravened by said Section 5, c. 58, S. L., 1915; but, having reached the conclusion that said Section 5, c. 58, S. L., 1915, or at least a portion thereof, must fall for failure to meet the requirements of Section 57, Art. 5, of the Constitution—[i. e., requiring subject to be expressed in the title], it is unnecessary to discuss the remaining provisions.' And again, later on at page 949 of 215 P. (90 Okl., 21) : 'We are not holding that the legislature would have had no power to enact the statute in question, if it appeared to the legislature that there was a public demand for such provision, but do hold that the title materially fails in expressing the subject of the act.'

"It would seem clear that the legislature has the right to provide the order and priority of claims against an insolvent bank based upon a reasonable classification. But, as already shown, we think there is no classification here, because the owners of items, without discrimination or classification of such owners, are given the same right of priority upon insolvency of the bank. If there is a classification it is between the owners of items as distinguished from other creditors. But clearly there are ample grounds for reasonable distinction between the owners of such items and general creditors. The holders of such items passing through a bank on the eve of insolvency are subject to a peculiar risk and hazard arising from the nature of banking institutions and the necessary commercial practice of handling checks and treating the items as equivalent to so much cash, to accomplish which it is necessary to place a certain trust and confidence in the payor bank. It would defeat the banking system to require payment in currency of every item. Such real difference in the situation justified the legislature in making such provisions. They are not based on any classification or difference in the owners of items, but apply to all

creditors·who come within the facts and conditions defined; namely, present items for payment when the bank becomes insolvent before the items are actually paid in cash or by solvent credit.

"The equal protection clauses of the federal and state Constitutions (Const. U. S. Amend. 14; Const. S. C., Art. 1, Section 5) do not take from the state legislature the power to classify, but, on the contrary they admit of the exercise of a wide scope of discretion and avoid legislative enactments only when they are without any reasonable basis, and therefore purely arbitrary, and one who assails the classification must sustain the burden of showing that it is essentially arbitrary and without any reasonable basis. *Harrison v. Caudle,* 141 S. C., 407, 139 S. E., 842; *Henderson v. McMaster,* 104 S. C., 268, 88 S. E., 645; *Stewart v. Western Union,* 93 S. C., 119, 76 S. E., 111; *Lindsley v. Natural Gas Co.,* 220 U. S., 61, 31 S. Ct., 337, 55 L. Ed., 369, Ann. Cas., 1912-C, 160; *Whitney v. People of State of California,* 274 U. S., 357, 47 S. Ct., 641, 71 L. Ed., 1095; *Keokee Coke Co. v. Taylor,* 234 U. S., 224, at page 227, 34 S. Ct., 856, 58 L. Ed., 1288.

"The regulation of banks and legislation as to insolvent banks are special matters peculiarly within the province of legislative action. 2 R. C. L., 379; 12 C. J., 116; 7 C. J., 10, 480; *Noble State Bank v. Haskell,* 219 U. S., 104, 111, 31 S. Ct., 186, 55 L. Ed., 112, 32 L. R. A. (N. S.), 1062, Ann. Cas., 1912-A, 487.

" 'One of those conditions at the present time is the possibility of payment by checks drawn against bank deposits, to such an extent do checks replace currency in daily business. If, then, the legislature of the State thinks that the public welfare requires the measure under consideration, analogy and principle are in favor of the power to enact it.' *Noble State Bank v. Haskell,* 219 U. S., at page 111, 31 S. Ct., 186, 188, 55 L. Ed., 112, 32 L. R. A. (N. S.), 1062, Ann. Cas., 1912-A, 487.

## "OBLIGATION OF CONTRACTS NOT IMPAIRED AS AFFECTING DEPOSITORS AND STOCKHOLDERS

"In the case under the former Act it was argued in ■ the briefs that the Act was also unconstitutional in that it impaired the obligation of contracts as affecting stockholders and depositors in insolvent banks. It will be seen from the decision that the Supreme Court in its decision found no objection to the Act on this score.

"Moreover, as regards depositors, the only contract the bank has with a depositor is that it will pay his deposit upon demand, or his checks on presentation if the bank has sufficient funds on deposit to his credit. There is no other contract with the depositor. The depositor has the right to withdraw his money at any time by simply signing his name to a simple slip of paper and present (ing) it at the window or give (ing) it to some other person to present. The bank's relation to the depositor is simply that of debtor and creditor. The relation is not one of trust. The depositor has no lien against or special interest in any of the assets of the bank. *Leaphart v. Bank,* 45 S. C., 563, 23 S. E., 939, 33 L. R. A., 700, 55 Am. St. Rep., 800; *New York County Nat. Bank v. Massey,* 192 U. S., 138, 24 S. Ct., 199, 48 L. Ed., 380.

"Is it not very far-fetched to contend that a statute impairs the obligation of contract as applied to depositors when all the depositor has to do is to sign his name and withdraw his funds at any time? If he leaves his money on deposit after the passage of an Act of the kind here in question, he necessarily leaves it there subject to the term of the Act after a reasonable time to withdraw his deposit has been afforded him after the passage of the Act. If he leaves it on deposit after the Act is passed, the Act becomes a part of the law and contract governing his deposit to which he has necessarily assented by leaving his money on deposit. One who has so simple a remedy in his own hands of withdrawing his deposit cannot claim that any contractual or

vested right has been violated by such a statute when for a long period of time he left his money on deposit subject to the terms of the statute. If he leaves his money on deposit, he necessarily runs the risk of the bank becoming insolvent and of all the incidents attached by law to such insolvency.

"As regards stockholders, the only way their rights ▮ enter in would be by reason of statutory liability.

Stockholders, however, have no vested right to an indefinite continuance of all existing laws relating to the corporation for all time. Such a doctrine would necessarily imply that the Legislature would have no power to legislate at all concerning banks because any Act it passes would to some extent or indirectly affect the liability of the stockholders. That, of course, cannot be true.

"The charter of every corporation is subject to the reserved right of the State to amend, modify or repeal. 'All charters now existing or hereafter created shall be subject to future repeal or alteration.' Constitution of S. C., 1895, Art. 9, § 2.

"Some of the old cases in this State on stockholders' liability were based upon an express provision in the Charter or Act of the Legislature incorporating the bank which provided for a stockholders' liability. Op. *South Carolina Mfg. v. State Bank*, 28 S. C., Eq. (6 Rich. Eq.), 227. When banks later on commenced to be incorporated under general laws the same is true. When one invests his money as a stockholder in a bank, he takes the risk of the insolvency of the bank and the statutory liability imposed. This statutory liability provision is subject to amendment, modification, or repeal by the State whether in the form of amendment or repeal of the charter or by general laws.

"In *Woodbine Savings Bank v. Shriver* (Iowa, 1929), 226 N. W., 374, an Act added to the liability of stockholders in a savings bank by imposing the additional obligation on stockholders to replace impaired capital. The Court held that, under the reserved power of the Legislature to amend,

abridge, or repeal, a contract between the State and the corporation could be impaired without violating the constitutional inhibition against impairing the obligations of contracts; but that the Legislature could not affect the existing contract between the corporation and its stockholders by imposing additional obligations or liabilities on the stockholders as to the existing conditions at the time of the passage of the Act; so that, if the impairment of the capital occurred before the passage of the Act, the Act could not be sustained, but, if the impairment of the capital which gave rise to the additional stockholders' liability occurred after the passage of the Act, it could not be deemed unconstitutional or violative of the stockholders' constitutional rights.

"In the case at bar, the time which controls is the insolvency of the bank. Inasmuch as the insolvency of the Bank of Swansea occurred after the passage of the Act in question, no constitutional rights of the stockholders are impaired.

"As said in *Noble State Bank v. Haskell*, 219 U. S., 104, at page 110, 31 S. Ct., 186, 187, 55 L. Ed., 112, 32 L. R. A. (N. S.), 1062, Ann. Cas., 1912-A, 487: 'The only contract that it relies upon is its charter. That is subject to alteration or repeal, as usual, so that the obligation hardly could be said to be impaired by the Act of 1907, before us, unless that statute deprives the plaintiff of liberty or property without due process of law.'

"Although it is true that a statute cannot increase or diminish the liability of stockholders in a corporation for debts incurred anterior to the passage of the Act, the rule is that such an Act is perfectly valid as to debts subsequently contracted.

" 'In the exercise of a reserved power to amend or repeal the charter or to prescribe the extent of stockholders' liability, it is agreed that the legislature may impose on stockholders of a corporation a new or additional personal liability for debts of the corporation subsequently contracted; and,

although there is authority to the contrary, the general rule is that it may do this even in the absence of such express reservation of power.' 12 C. J., 1062.

"It is clear that in the case at bar the debts, for which preference is given by the statute, are contracted within a day or two before the failure of the bank, and therefore long after the passage of the Act in question. The time which controls is the contracting of the debt, that is, the giving of the draft or check for the items presented, and not the date of the bank's charter or the time of the stockholders' respective subscriptions to the capital stock.

"It appears from 12 C. J., 1062, that the Legislature may impose on stockholders of a corporation a new or additional personal liability for debts of the corporation subsequently contracted. Inasmuch as the Federal Constitution (Article 1, § 10) as well as the State Constitution (Article 1, § 8) contain clauses against impairing the obligation of contracts, the question involved in this case is one that is reviewable by the Supreme Court of the United States, and a decision of the Supreme Court of South Carolina would not necessarily be final. For that reason the decisions of the Supreme Court of the United States are entitled to controlling weight upon this question. For this reason I call attention to a case which completely disposes of this question in regard to stockholders; namely, *Sherman v. Smith,* 1 Black (66 U. S.), 587, 17 L. Ed., 163. In that case the Banking Law of New York contained a provision that the stockholders of a bank organized under that law should not be individually liable for its debts, unless by their own agreement, but reserved in the State the right to repeal or change the law. (In the case at bar it will be observed that the Constitution of 1895 of this State, Article 9, § 2, contains the same provisions in these words: 'All charters now existing or hereafter created, shall be subject to future repeal or alteration.') Afterwards an amendment to the State Constitution and an Act of the New York Legislature declared

that the shareholders of all banks should be held individually liable. The Supreme Court held that, notwithstanding the bank was organized before the amendment to the Constitution, they were liable for the debts of the association in their individual capacity; that the articles of association or charter under which the bank was formed was not a contract with the State and that the changes made by the subsequent Constitution and subsequent Act of the Legislature were constitutional and valid, notwithstanding as to the stockholders the articles of association, under which they went into the enterprise, contained a provision that they would not be individually bound for the debts of the concern.

"This case of Sherman against Smith has never been reversed or modified, but, on the contrary, has been cited with approval and applied by the Supreme Court of the United States to other kindred matters in the following cases: *Pennsylvania College Cases,* 13 Wall. (80 U. S.), 190, 216, 20 L. Ed., 550; *Miller v. State of New York,* 15 Wall. (82 U. S.), 478, 495, 21 L. Ed., 98; *Looker v. Maynard,* 179 U. S., 46, 52, 21 S. Ct., 21, 45 L. Ed., 79; *Noble State Bank v. Haskell,* 219 U. S., 104, 110, 31 S. Ct., 186, 55 L. Ed., 112, 32 L. R. A. (N. S.), 1062, Ann. Cas., 1912-A, 487.

"I refer especially to what Justice Holmes says in *Noble State Bank v. Haskell,* 219 U. S., 110, 31 S. Ct., 186, 55 L. Ed., 112, 32 L. R. A. (N. S.), 1062, Ann. Cas., 1912-A, 487, about the exercise of the 'Police Power' in the regulation of banks. I adopt this opinion as a part of this decree. I adjudge the return sufficient. I hold that the respondents have preference under the statute and that the petition and rule to show cause be and they are hereby dismissed. And it is so ordered."

The decree as thus amended is the opinion of this Court. All exceptions to the decree are overruled.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.

Mr. Justice Cothran did not participate on account of illness.